Whenever you're ready, Counsel. Good morning. May it please the Court, my name is Chad Knight, and I represent the petitioners in this case, BNSF Railway Company and John Swing. In this case, the District Court properly held, Your Honors, that this lawsuit with 192 plaintiffs in it, pursuing common claims in a single complaint, asking for a single jury trial, met the criteria for federal jurisdiction under CAPA. And that finding was entirely correct. After that finding, the burden then shifted to the plaintiff in this case, or the plaintiffs, to prove the applicability of the local controversy exception to CAPA jurisdiction. And that's the narrow exception that this Court has defined as being limited to, quote, a controversy that uniquely affects a particular locality to the exclusion of all others. And that's from the Allen v. Boeing case. So here the plaintiffs had the burden of proving that that narrow exception applied. And there are a number of factors under 1332d-4 that have to be satisfied, all of which have to be satisfied. I'd like to focus on the third one, if I could, first. And that requirement is that the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the state in which the action was originally filed. And we believe that the district Let me ask you a question about that. Yes, Your Honor. I couldn't find that the magistrate judge ever discussed that factor. Well, Your Honor, he discussed it certainly at oral argument. In his decision. And then in his decision, I don't believe that he provided a proper analysis of this factor at all. I agree. Did the district court ever address the argument? The district court did address the argument. In fact, that was the primary point that we raised in our objections to the magistrate findings that were the subject of the district court's oral argument. I realize you made the objection to the magistrate's findings, but the district court addressed the argument? Well, Your Honor, the district court found that the local controversy exception applied. Finally said. Primarily referring back to the magistrate's findings, I don't think that the district court properly analyzed this criteria either. Then your argument is we must remand to have the district court analyze this? Your Honor, I don't believe so. I believe the court can review this issue de novo. I think that what we have in the record is sufficient for the court to issue a ruling reversing the remand order. Well, if we reverse it de novo or if we approach it on a de novo basis, we'd really have to look at the plaintiff's allegations and suggest that they were absolutely clear that they did not meet the requirements of subsection 3, wouldn't we? Well, Your Honor, you would have to test the plaintiff's allegations and the evidence. We're limited to the complaint, I believe, on this issue. That's why I said we're going to have to look at the allegations of the complaint and look at them and suggest on our own theory that they meet what is required in subsection 3 or don't meet it, right? I believe that's correct. So you would have in front of you the same information that the district court had in front of it and would have on remand. It seems a little hard for me to make a determination. Are you suggesting that if we were in the district court, the district court couldn't have a hearing about this? Well, Your Honor, the district court could. My worry is that I think the district court, if they had the allegations like the paragraph 16 on page 482 of the complaint, that's one of your big ones, or paragraph 121 on page 506 of the complaint, it would seem to me that in those circumstances, the district court could have, if you will, a hearing and say, what does this mean and get into the basis thereof. That's what I've seen done in a district court in these kind of situations, whereas I've just got to read it and give it every intendment, right? That's all I can do. So to answer your first question, I don't think if we're limited to the four corners of the complaint, to the allegations, that we can then have an evidentiary hearing to try to explain or elaborate on allegations. The law does allow for a post-removal amendment of the complaint to amplify or explain an allegation that's relevant or pertinent to the capital jurisdiction. It probably is what the court does in its hearing. Which, well, in fact, happened here. We have an amended complaint by the plaintiff that they assert was made to amplify or explain issues related to capital jurisdiction, and that was in front of the district court when the decision was made at the time. So I do think that that has happened here. I do think that the plaintiff has had every opportunity to develop the record. When it comes down to it and the actual analysis being done, the plaintiff bears a burden of proof here, and that has to be satisfied through the allegations of this complaint. But what I do think is readily apparent from the complaint is that we have a set of facts, a set of claims that do have interstate reach. And if we can decide that from the allegations of the complaint, then we need not go any further with this exception. Yes, Your Honor. Yeah, help me with that because your view of the complaint is that they have basically brought some kind of a nationwide class action to recover for injuries suffered by anyone anywhere in the country that arose out of this asbestos? No, I don't believe that, Your Honor. In fact, they've clearly limited their allegations or their class, so to speak, to named plaintiffs who either in their terms resided or visited the city of Libby, Montana. And they certainly are making every effort to couch their complaint and their allegations as limited in scope to those individuals. I guess that's why I'm asking the question. That's how I read the complaint. And so why isn't that third, I don't know what you call the thing with the three Roman eyes, why isn't that satisfied then if they've confined the class of people on whose behalf they're seeking recovery to that group? Why isn't that satisfied? I think that's the central question here, Your Honor. And so my answer to that is this. The way this provision has been interpreted by courts is, and what we find in the Senate report in the legislative history, is that this principal injury exception was intended to apply to the world of potential injury, not just the group of plaintiffs defined in the class. So, in other words, we use an example from the Senate committee report. You have a defective product that is being marketed nationwide. You can't, in your complaint, limit the injuries to a particular state Fair enough, I got you. So their response is that there is no evidence, there's not even any suggestion out there, that anyone outside of this relatively small geographic area, it's centered around the town, is it the town of Libby? Yes, Your Honor. Sorry if I get the name wrong. Certainly. But what they say is that there's no suggestion that anyone in New Jersey has been exposed to enough asbestos from this particular site to cause them any injury whatsoever. And so, yeah, I guess in theory, I think you're right. The way you've read the statutory language is correct. But there's just nothing to suggest on this record that anyone other than this folks that were in this small geographical area were exposed to enough of this contaminant to cause them injury. So why, again, haven't they, why isn't this particular condition satisfied? Well, Your Honor, I think I would cite you to a case that's actually considered that same argument. And the way the court looked at it was this. This is the Moreno Court, District Court in California cited in our briefs. The plaintiffs there argued that there are no allegations that injuries occurred outside of California. This is a quote. However, there are also no allegations that injuries were limited to California. Courts have routinely looked beyond the formalities and looked to the nature and scope of the alleged wrong. And so what we have here is we have specific allegations that this allegedly dangerous asbestos-laden vermiculite was put into rail cars and then transported over BNSF's interstate rail system. Yeah, but the exposure, the injuries that they're seeking recovery for come from this really intense exposure, right, that's centered around this town. And there's just nothing to suggest. I don't know if you're able to point to something that says, well, once the rail car got to New Jersey, residents of New Jersey were exposed to enough of this asbestos to cause them injury. And I understand your example about the defective car. Yeah, it's not enough if the car was marketed nationwide and the plaintiffs say, oh, but we just want to recover on behalf of Montana residents. I get that. But the nature of their injury allegations is that we were exposed to this really unusually high concentration of this stuff. And that's not true of people in the rest of the country. Except, Your Honor, they don't make that last sentence that you just said. They don't make that allegation. And so they have the burden here to prove otherwise. No, no, I agree with you. The complaint doesn't say that. But the nature of the conduct that they're trying to tag your client with liability for is unique to this place. It's not occurring nationwide, right? I think that's where I would disagree with you, Your Honor, because they specifically allege in the complaint, among other things, that it's the transportation activities of BNSF that led to the exposure to asbestos-laden vermiculite. And that is in Complaint Paragraph 76. And then they further allege that those transportation activities occurred in Libby and beyond. They further allege that these activities were nationwide in scope and constituted millions of tons of asbestos-laden vermiculite. But then, Your Honor, they even make a specific and separate allegation against BNSF. They specifically allege that BNSF is liable for acting in concert with Grace in, quote, furtherance of a common goal of profiting from the sale and distribution of this asbestos-laden vermiculite across the country. So now they're specifically alleging, aside from the transportation activities, that BNSF is a part of this nationwide scheme with Grace in the sale and distribution of this vermiculite. You just completely misread the complaint. I grant you as an advocate you're doing a good job for your client, but I just think you've misread the complaint. What they have alleged is that there was a very localized course of conduct that caused exposure well above the exposure that anyone else in the country suffered, and that that's what caused their injuries. So if that's the nature of the liability, the allegations that they're trying to ground liability on, there is no inference to say, oh, well, and also, of course, people in New Jersey would have suffered the same kind of injury. It's just that those two don't follow in my view. Your Honor, and just backing up to the discussion I just gave you about the claim of being in concert with Grace, it is specifically alleged as a count. It's paragraph 46I. That is one of their accounts of negligence that they are asserting against BNSF, is this concept of acting in concert with Grace, which they refer to as this common goal. Well, not to inflict injury upon people nationwide. They were acting in concert with Grace to get the stuff out of the ground in that particular community, and in the manner in which it was being loaded onto the railcars in Libby was what was causing this pretty extraordinary level of exposure to people in that area. They weren't saying that your client conspired with Grace to expose people to New Jersey and to ridiculously high concentrations of this stuff. Well, except your Honor, I respectfully disagree and refer you to paragraph 16, which specifically says when referring to this relationship between BNSF and Grace that it was in furtherance of this common goal of profiting from the sale and distribution of vermiculite across the country. But beyond that, your Honor, we can look to the Sixth Circuit decision in— Are you talking about paragraph 16 of the amended complaint or the original? That would be in the original complaint, your Honor. Well, that's not—paragraph 16 of the original complaint, at least that I have in front of me, says nothing about that. But anyway, okay. I'm sorry. I didn't mean to— And if it was the amended complaint, my apologies. My notes said the original complaint. So your second argument is that the definition of principal injuries is ambiguous. Yes, your Honor, it is ambiguous. And so we do look to the legislative history and we look to the intent behind it. And the Sixth Circuit has looked at this for us already, and this is in the Davenport v. Lockwood case. And this was—I think this is an excellent case to refer to because it, like the Libby case, was focused on individuals injured by the tainted water in Flint, Michigan. And even though you had a class of people who were limited to the Flint area claiming injury to the water, sounds a lot like our Libby situation, the court held this. It's local in a colloquial sense. However, it is not local in the way Congress contemplated in CAFA. It was the alleged conduct of primarily out-of-state defendants that caused plaintiff's injuries, and the class actions filed surrounding the Flint water crisis will have long-lasting implications for interstate commerce and will be left—and will be felt far beyond the Flint. What they were getting at is that this is a case in Davenport, like here in Libby, that does have interstate ramifications. That's a term that we've seen here in the Ninth Circuit in the Jordan v. Nation State case, that CAFA favors jurisdiction over cases with interstate, quote, ramifications. And here, unlike the example given in the Senate report of a localized plant leak that's limited to injuring properties around the vicinity of the plant, we have a situation where a railroad engaged in interstate commerce is being accused of being liable for transporting on its interstate lines into and out of Libby, Montana, a product that they allege is unsafe. They are, in fact, seeking to hold BNSF strictly liable for engaging in an activity that is required of it by federal law. Railroads are required to accept goods tendered to them in interstate commerce for transport. That has been determined by federal government or DOT regulations to be a substance that is not hazardous, but yet plaintiffs' claims are seeking to impose strict liabilities for engaging in an abnormally dangerous activity. There are, aside from just the factual allegations, there are interstate implications for this case, and under this Davenport decision in the Sixth Circuit, we request the same result here. Okay. I see I'm out of time. We'll give you a couple minutes for rebuttal. Thank you very much. Let's hear from counsel for the plaintiffs. Alan McGarvey for the Libby plaintiffs. Your Honor, I'll start with the Davenport decision. It is no authority whatsoever or utility to this case because in the Davenport decision, the parties agreed that the requirements of 1332D4AI had been met. That was strictly a case that addressed the question, were there other class actions? So we don't have any support for this idea that if the breeze happened to blow across the state line, that we therefore have a significant effect on raising interstate concerns. But what do we do with this fact? Don't I have to determine what, and I quote, principal injuries resulting from the conduct or any related conduct of each defendant occurred? How do I determine what it means, principal injuries? Well, the court has looked at that question and a number of defined it or interpreted it. My court? I believe so. What case? Because I looked for one, and if you've got one, I'll be glad to read it. Seems to me somebody's got to determine what principal injuries means. There are a number of cases that address it. I'm trying to look for a Ninth Circuit decision. I thought I had cited one in my brief. But the phrases that I've seen, and I hope I've cited two, are that it is. Virtually all of the injuries? Not virtually all, but. A fair majority of the injuries? Plurality of the injuries? All or almost all of the damage caused. Actually, that is from the Senate report. I know what's in the Senate report. Yeah, and I think that was cited by the court. So, yes, I mean, there's a question of what does that mean? What does all mean? There are a number of cases to look at. My basic question was principal injuries, and if the district court has got to determine what principal injuries is, what are they going to look at? So does that say I have to? Because would you agree with me the magistrate doesn't discuss principal injuries resulting from conduct in his decision? No. And would you agree then that the district court, which just affirms the decision, doesn't discuss it either? I would agree with that. So somebody's got to discuss it, haven't they? So are you saying to me, okay, Watford, you're the smartest, you discuss it, and Smith, you and Nelson go along. What are you saying? I think that there's ample record here for the court to conclude that. I mean, in part, it's a question of where you draw that line. Well, I understand it's a question of where you draw the line. And when I read your complaint and I read the allegations of the complaint, unless I get to the same result, and I was glad my colleague Judge Watford was asking the questions, I got to the same result he did with the same exact questions as to what does your complaint really say. What is it really alleging? Because these allegations that are in the complaint surely talk about that this has happened more than in Montana. I don't think they suggest that in the remotest, Your Honor. The case is— Well, but just a minute. They were shipped. You allege that the defendants shipped this asbestos-contained vermiculite across the country. Sure. You allege that Robinson Insulation placed the asbestos contaminant into the stream of commerce for use and consumption by the general public. So unless I have to look at your complaint and narrow it only to the people who you're representing, then I have to look at the Senate report and see if that's enough that would suggest that it can go back to the state courts. The standard, Your Honor, is principal injuries caused by the conduct alleged in the complaint. I understand that. So just because you've got a toxin that gets shipped around the country is no indication that there is conduct causing injuries. The only indication in this complaint of conduct causing injuries is the contamination of the Libby community. There is no suggestion that there is contamination anywhere else, let alone an asbestos contamination. Asbestos is ubiquitous. To get to a dangerous, injurious level, asbestos has to be very high. Our second amended complaint alleges that even a decade after the EPA was in there, the levels of asbestos in Libby, Montana were 14 fibers per milliliter. That's 140 times higher than the exposure level that's permitted for a workplace. That is an injurious exposure. It is the only allegation of injury. It is inconceivable that there was injury somewhere else because a train happened to have vermiculite, just like it's carrying all kinds of toxins all over the country, injurious exposure from the conduct alleged. The conduct alleged here was an extraordinary contamination of Libby, Montana. There are thousands of people that have brought cases, hundreds of cases, in Montana court for these injuries. There are not cases alleging anywhere injuries elsewhere. This is the location. It certainly meets the standard of principled injuries by any construction. Well, if I knew what principled meant, I guess I could agree with you. Well, the court is going to have to decide what principled means. That's correct. Why did I not send this back to the district court to decide it? So here's the problem. There's a tension between requiring this factual inquiry and using the federal court's time to do that. But if you just look at the face of the pleadings, you have to make a factual determination. A pleading that was created for state court, now you have to look at it. And as a plaintiff's attorney, I have to plead in the negative. I have to anticipate that every defense that might be made under the local controversy exception and make an adequate factual pleading. How do I do that? I certainly can do it in a very conclusory fashion. But does the court, does this court want the courts in the Ninth Circuit to conduct factual hearings? Where do you want to draw that line? Certainly. Well, I don't really want to get involved in a factual hearing, if that's what you're suggesting. If that's what you're suggesting, it seems to me the district court is the best place to go because factual hearings I'm not privileged to do, and I like to review on abuse of discretion or disnoval as to what they've done. I hate to have the hearing myself. That's what I did when I was on the district court, and I knew somebody upstairs was going to review what I did. That's why when I saw this, and even if he's correct that they didn't look at it, I was interested what you were going to say we ought to do because for me deciding this without some hearing is going to be difficult. Well, the law in this circuit is that you look at the four corners of the pleadings that you do not have a factual hearing. So if it's remanded back to the court, it would be a direction peculiar to this case that there needs to be further factual development that could be by way of pleading or it could be by way of further factual inquiry. Well, that's what I was going to say. You wouldn't necessarily have to have a hearing. You could be ordered to re-plead so that we would know what you mean by principal injury, and then the court could look at it. Again, Your Honor, with the understanding now of the arguments that are made and how they would be made, I would plead this differently. But how do you plead that case? You're pleading a negative, and you're pleading a negative in the blind. But I would ask the court to find is that whatever principal injuries from the conduct of the defendant means. It has to mean that there were actual injuries, that there was actual injurious exposure. Nowhere in this complaint is there any suggestion of that other than the bare fact that the vermiculite was shipped around the country. Well, if that's sufficient, there's no toxic torture. Not necessarily shipped, but put into the stream of commerce for use in consumption. That's paragraph 121 of page 506. I get most of this stuff from him, and then I have to read this humongous complaint. I frankly compliment you putting it together to see if there's something else. That's all I'm trying to say. Let me ask you this. What about these other objections? Are there any other objections that the railroad can make here, or have they waived them? Well, I believe they did not raise them and that they're required to do so under this circuit's authority. Certainly to the factual finding on the residency of the plaintiffs, that's a factual finding. But also under this court's authority where there's kind of a blended question of fact and law, and I think the one that we've been talking about is exactly that. It's incumbent on the objecting party to identify that. So in the de novo hearing before the district judge, that court has the opportunity, and I have the opportunity to supplement my pleadings to present sufficient information to the court. Therefore, yes, I think those other objections are waived. On the second factor, if it's not waived, can you explain why this would satisfy where you'd have an in-state defendant from whom you're seeking significant relief? As I understand it, the only one that you've suggested satisfies that is defendant Swing, and he wasn't there for the big chunk of the time that you're seeking the damages. So assuming it isn't waived, how would he satisfy that requirement? Two answers. First, he was there for a big chunk of time. I thought the damages you're seeking go back 70 years, isn't it, that this was being done? There was exposure over a long period of time, but the damages we're seeking are for asbestos disease injury that has been more recently diagnosed. All of that, all of our plaintiffs, under the complaint, all of our plaintiffs were exposed to asbestos caused by the management decisions of John Swing. So there were other defendants that also contributed to it, but the source of the contamination was this extraordinary amount of vermiculite spilled throughout Libya, and these trains running back and forth, and the high levels that were there. That was not all done during John Swing's tenure, but all of the plaintiffs were exposed during that tenure, and therefore literally all of them are claiming and have a claim that he caused their injury. But certainly under the 15 to 20 percent standard of significant injury this court has adopted, we're easily there. Maybe before you sit down, I think you ought to address the mass action argument. Yeah, I'm a little embarrassed to do so because I could have avoided the whole question by filing two complaints with 91 plaintiffs. Well, I agree. So is it forfeited? No, it's not forfeited. I mean, it's a jurisdictional question. It's diversity jurisdiction, and the question is, did we file a complaint that seeks a joint trial of all these claims? And certainly under the second amended complaint, it cannot be read that way. The original complaint can be read that way, and so what I'm asking this court to do is apply the same logic that it has for amending pleadings to its determination of when does the plaintiff seek a joint trial. These are very unusual circumstances. We've already filed cases for these plaintiffs. We're stayed. We can't sue the railroad. We can't sue the insurers. The bankruptcy injunctions get lifted. We've got a backlog. We file those with the expectation that they will get moved to the cases that they belong to, and then we have a further complication, Your Honor, that after remand, with no stay of that remand order, 128 of these plaintiffs, because their disease has not developed to an impairment level, are stayed. They are placed on a deferred docket. But even if with these stays and non-stays, having been involved a little bit in these asbestos cases in the past, isn't there one common argument to be made, and it's either negligence or some general argument, and wouldn't it be then a case in which all the plaintiff's interests would be, if you will, subject to the result of that argument about that general cause of action and therefore could be the subject of a good mass action? So it really can't be done. Why? Because, well, first of all— Well, it's all negligence or it isn't, and it's what they did or they didn't, and what these plaintiffs do or don't do in the future is not going to have a whole lot to do with whether there was negligence or there wasn't and whether what they did or not was negligent. And once deciding that, which could be the mass action, if you will, the rest would be all damages. I think there are groups, Your Honor. I mean, we did that in all the asbestos litigation. You had to have one type of damage or one type of damage or one type of damage because we had generally a mass action about the asbestos litigation altogether and whether you were exposed or what, and we came down to three different theories. If you had asbestosis, you were going to get paid. If you didn't, you had maybe—weren't going to get paid if you'd been smoking. I'm just trying to figure out why this isn't a good candidate, which would keep it in the federal court. A couple of reasons, Judge. First of all, we've got exposures over different periods of time. Second, we have exposures in different locations. So can we break that up into a series of group actions that address liability only? Possibly, but it's not been done. We've done instead, by the guidance of the Montana Supreme Court, this asbestos court determination with lead cases that will guide the determination. So nobody's bound by those, so it's not a mass action. Can it be done on a group basis? Maybe, but I think the methodology that the Montana Supreme Court and the asbestos court have adopted is a better methodology. Thank you. Thank you, Counsel. Let's put two minutes on the clock for rebuttal. Thank you, Your Honor. Subject to questions, I want to revisit three quick points. One, to correct my statement to you earlier, is the amended complaint, paragraph 16, where you'll find that allegation that I referred to earlier. But getting to the question Your Honor had about the definition of principal injury, it has not been defined by the Ninth Circuit. I think you're correct on that. It has been looked at by other circuits. It has been looked at by lower courts within this circuit. And certainly, I understand your point that you may want a lower court to evaluate this case under a definition, a finding of what a definition is. With regard to what that finding should be, and I think this goes to your points about what has been alleged in the complaint, it's clear that this principal injury prong has been defined to include claims that, quote, could be alleged, which certainly instructs us to look not just at what is limited by the factual allegations or the claims in the complaint, but looking at overall and applying our common sense and so forth to what is being alleged and the reach and the potential reach of what is being alleged or what could be alleged. What we also see in the case law describing this exception is it refers to alleged or any related conduct. So again, we're being instructed to look beyond just the specific allegations that the plaintiff has made to what could be the potential interstate reach of a claim. In fact, the cases go on to specifically say we don't want plaintiffs to be able to manipulate CAFA jurisdiction by artful pleading. And to that point, you discussed that there may be an opportunity for the plaintiff to amend their complaint in this case, and this Court has addressed that in the Banco case and subsequently in the Broadway Grill case, and there are only very narrow circumstances in which it would be appropriate for a plaintiff to amend an allegation. For example, it would be inappropriate, it would not affect the jurisdictional analysis, if the plaintiff were to go back and withdraw allegations that addressed all these interstate implications that we've been discussing today for the purpose of defeating federal jurisdiction. They would not be able to do that even if given the opportunity based on those cases. So, Your Honor, with that, unless you have any further questions, I appreciate your time. Okay. Thank you very much. The case just argued is submitted.
judges: N.R. Smith, Watford, R. Nelson